**JENNER & BLOCK LLP**
Alexander M. Smith (SBN 295187)
asmith@jenner.com
515 Flower Street Suite 3300
Los Angeles, CA 90071
Telephone:   (213) 239-2262
Facsimile:   (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (to apply *pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Telephone:   (312) 923-2765
Facsimile:   (312) 527-0484

Attorneys for Defendant
Tilray Brands, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA KHA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>TILRAY BRANDS, INC.,<br><br>                    Defendant, | Case No: 2:25-cv-10630-HDV-BFM<br><br>The Honorable Hernán D. Vera<br><br>**NOTICE OF MOTION & MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Hearing Date:   April 9, 2026<br>Hearing Time:   10:00 a.m.<br>Courtroom:     5B (1st Street) |

1  TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

2      PLEASE TAKE NOTICE that on April 9, 2026, at 10:00 a.m. Pacific Time, or as

3  soon thereafter as the matter may be heard, Defendant Tilray Brands, Inc. will appear in

4  Courtroom 5B of the federal courthouse located at 350 West 1st Street, Los Angeles,

5  California 90012 and will, and hereby does, move to dismiss Plaintiff's complaint pursuant

6  to Federal Rule of Civil Procedure 12(b)(6).  Specifically, Plaintiff's claims are preempted

7  by federal law because they seek to hold Tilray liable under state law for failing to state

8  the "corrected amount of protein" in certain versions of the labeling of its Hemp Protein +

9  Fiber product, even though the applicable FDA regulations do not require Tilray to state

10  this information.  Tilray seeks dismissal with prejudice and without leave to amend.

11      Tilray's motion to dismiss is based on this Notice of Motion and Motion, the

12  following Memorandum of Points & Authorities, the Declaration of Alexander M. Smith

13  and Exhibit 1 thereto, the concurrently filed Proposed Order, and any evidence or argument

14  that Tilray may offer in its reply brief, at the hearing on this matter, or otherwise.

15      Pursuant to Local Rule 7-3, and as set forth in the Declaration of Alexander M.

16  Smith, Tilray's counsel, Alexander M. Smith, met and conferred with Plaintiff's counsel,

17  Adrian Gucovschi, regarding this motion via Zoom on February 16, 2026.  Counsel were

18  unable to resolve any part of the motion during their meet and confer.

19

20  Dated:  February 25, 2026          JENNER & BLOCK LLP

21                                    By:    /s/  Alexander M. Smith
22                                           Alexander M. Smith

23                                    Attorneys for Defendant
24                                    Tilray Brands, Inc.

1

# <u>TABLE OF CONTENTS</u>

2    INTRODUCTION ............................................................................................... 1

3    BACKGROUND .................................................................................................. 2

4    I.    The FDA's Protein Labeling Regulations. .................................................. 2

5    II.   Allegations of the Complaint. .................................................................... 4
6
7    ARGUMENT ....................................................................................................... 6

8    I.    Plaintiff's Lawsuit Is Preempted Because the FDA Regulations Do Not
           Require a Statement of the "Corrected Amount of Protein" Absent a "Protein
9          Claim." .................................................................................................... 7

10   II.   Plaintiff's Efforts to Plead Around Preemption Fail. ................................ 9
11
12         A.    The statement "11g of Protein" on the Amazon.com page does not
                 require Tilray to state the "corrected amount of protein" on the label. .......... 9
13
14         B.    Plaintiff has not plausibly alleged that Tilray is responsible for the
                 contents of the Amazon.com webpage. ........................................... 12
15
16         C.    "Hemp Protein + Fiber" is not a "protein claim" under the regulations. ....... 13

17   CONCLUSION .................................................................................................. 14

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................6, 7

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ......................................................................7

*Boquist v. Courtney*,
  32 F.4th 764 (9th Cir. 2022) .........................................................................7

*Brower v. Campbell Soup Co.*,
  243 F. Supp. 3d 1124 (S.D. Cal. 2017) ........................................................4

*Clark v. Perfect Bar, LLC*,
  816 F. App'x 141 (9th Cir. 2020) .................................................................8

*De Keczer v. Tetley USA, Inc.*,
  2014 WL 4288547 (N.D. Cal. Aug. 28, 2014) ...........................................11

*Echo & Rig Sacramento, LLC v. AmGuard Ins. Co.*,
  698 F. Supp. 3d 1210 (E.D. Cal. 2023) ......................................................13

*Effinger v. Ancient Organics LLC*,
  657 F. Supp. 3d 1290 (N.D. Cal. 2023).......................................................14

*Emery v. Visa Int'l Serv. Ass'n*,
  95 Cal. App. 4th 952 (2002) .......................................................................12

*Gutierrez v. Kendal Nutricare USA LLC*,
  2025 WL 2693812 (E.D. Cal. Sept. 22, 2025) ...........................................14

*Hayden v. Bob's Red Mill Natural Foods, Inc.*,
  2024 WL 1643696 (N.D. Cal. Apr. 16, 2024)...............................................4

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ......................................................................4

*Nacarino v. Kashi Co.*,
  77 F.4th 1201 (9th Cir. 2023) .................................................4, 7, 10, 14

*Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*,
 205 Cal. App. 3d 1415 (1988) ...................................................................... 13

*Pardini v. Unilever U.S., Inc.*,
 65 F.4th 1081 (9th Cir. 2023) .................................................................... 7, 8

*Pardini v. Unilever U.S., Inc.*,
 961 F. Supp. 2d 1048 (N.D. Cal. 2013) ......................................................... 7

*Pisano v. Am. Leasing*,
 146 Cal. App. 3d 194 (1983) ....................................................................... 12

*Prudencio v. Midway Importing, Inc.*,
 831 F. App'x 808 (9th Cir. 2020) ............................................................... 12

*Reed v. NBTY, Inc.*,
 2014 WL 12284044 (C.D. Cal. Nov. 18, 2014) ........................................... 13

*Sandoval v. PharmaCare US, Inc.*,
 730 F. App'x 417 (9th Cir. 2018) ............................................................... 11

*Turek v. Gen. Mills, Inc.*,
 662 F.3d 423 (7th Cir. 2011) ..................................................................... 8, 9

*Victor v. R.C. Bigelow, Inc.*,
 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ............................................ 11

*Wilson v. Frito-Lay N. Am.*,
 961 F. Supp. 2d 1134 (N.D. Cal. 2013) ....................................................... 11

**Statutes**

21 U.S.C. § 321 ............................................................................................... 10

21 U.S.C. § 343-1 ........................................................................................... 7, 9

21 U.S.C. § 343 ................................................................................................. 2

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ................................................. 6, 12

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ....................................................... 6

Cal. Civ. Code §§ 1750 *et seq.* ................................................................. 6, 12

**Other Authorities**

21 C.F.R. § 100.1 ................................................................................... 8

21 C.F.R. § 101.9 ............................................................................. *passim*

21 C.F.R. § 101.13 ................................................................... 3, 10, 12, 14

21 C.F.R. § 101.36 ............................................................................... 14

58 Fed. Reg. 2079 (Jan. 6, 1993) ......................................................... 3, 9

81 Fed. Reg. 33742 (May 27, 2016) ............................................... 2, 3, 8, 9

# INTRODUCTION

Plaintiff alleges that Tilray Brands misleads consumers by claiming that its Hemp Protein + Fiber supplement contains 11 grams of protein without disclosing the "corrected amount of protein" in the Nutrition Facts panel.  She claims that Tilray "shows the total protein amount on the front of the Products' packaging but does not show the daily value for that amount on the back," which "misleads consumers into believing they are getting more protein than they actually are."  Compl. ¶ 3.  But the product label tells a different story, and it confirms that Plaintiff's lawsuit is preempted by federal law.

The controlling FDA regulation, 21 C.F.R. § 101.9(c)(7)(i), requires Tilray to state the "corrected amount of protein" in the Nutrition Facts panel *only* if the product label includes a "protein claim."  It does not.  The packaging Plaintiff depicts in her complaint does not state on the front label that the product contains 11 grams of protein.  In fact, the *only* reference to protein consists of the product name "Hemp Protein + Fiber," which is not a "protein claim" under the FDA regulations because it does not characterize the *amount* of protein in the product.  Absent a protein claim on the front label, the FDA regulations do not require Tilray to state the "corrected amount of protein" in the Nutrition Facts panel.  Plaintiff cannot use state law to hold Tilray liable for failing to include information in the Nutrition Facts panel that federal law does not require Tilray to include.

Plaintiff tries to sidestep preemption by characterizing the product's Amazon.com page as the product's "'label' or 'packaging'" and arguing that the use of the statement "11g of Protein" on the Amazon webpage requires Tilray to state the "corrected amount of protein" in the product's Nutrition Facts panel.  Compl. ¶¶ 2, 8.  This theory is meritless.  A webpage on a third-party website like Amazon.com is not a form of "labeling," which means that the use of the statement "11g of Protein" on that webpage does not require Tilray to state the "corrected amount of protein" in the Nutrition Facts panel.  Nor does Plaintiff allege any facts suggesting that Tilray dictated the contents of this webpage, as would be required to hold Tilray liable for the use of the statement "11g of Protein."  And to the extent Plaintiff claims that the product name "Hemp Protein + Fiber" requires Tilray

to include a statement of the "corrected amount of protein," that theory fails because the product name "Hemp Protein + Fiber" does not quantify or characterize the *amount* of protein in the product—which means it is not a "protein claim" under the FDA regulations.

Tilray's labeling complies with the FDA regulations. The Amazon.com webpage— which depicts an FDA-compliant label—does not change that result. Plaintiff's lawsuit is therefore preempted by federal law, and this Court should dismiss it with prejudice.

## BACKGROUND

### I.   The FDA's Protein Labeling Regulations.

The Federal Food, Drug, and Cosmetic Act ("FDCA") requires manufacturers of packaged food products to state the "total protein contained in each serving" on the label. 21 U.S.C. § 343(q)(1)(D). The FDA has promulgated a regulation, 21 C.F.R. § 101.9(c)(7), that sets forth more specific requirements about how manufacturers must calculate the amount of protein and state this information on the labeling.

The FDA requires *all* packaged foods to bear a "statement of the number of grams of protein in a serving" in the Nutrition Facts panel. 21 C.F.R. § 101.9(c)(7). Section 101.9(c)(7) provides that protein content must be "calculated on the basis of the factor 6.25 times the nitrogen content of the food." *Id.* In other words, the FDA "require[s]" protein content to be measured according to the nitrogen method. 81 Fed. Reg. 33742, 33868 (May 27, 2016); *see also id.* at 33869 ("For purposes of nutrition labeling . . . protein is estimated by determining the nitrogen content of an ingredient and multiplying it by a nitrogen-to-protein conversion factor."). The FDA refers to the number of grams of protein calculated using the nitrogen method as the "actual amount of protein." 21 C.F.R. § 101.9(c)(7)(ii).

The FDA regulations also permit manufacturers to state the "corrected amount of protein" in the Nutrition Facts panel, which must be "expressed as Percent of Daily Value." *Id.* § 101.9(c)(7)(i). The "corrected amount of protein" is calculated by multiplying the "actual amount of protein" (*i.e.*, the number of grams calculated using the nitrogen method) by the "protein digestibility-corrected amino acid score" ("PDCAAS"), which accounts for amino acid composition and digestibility. *Id.* § 101.9(c)(7)(ii); *see* 81 Fed. Reg. at 33869

(describing the PDCAAS as an "amino acid scoring procedure that takes into account digestibility of a protein" and "provides a reasonable measure of protein quality").

The FDA regulations provide that a "statement of the corrected amount of protein per serving . . . *shall* be given if a protein claim is made for the product, or if the product is represented or purported to be specifically for infants through 12 months or children 1 through 3 years of age." 21 C.F.R. § 101.9(c)(7)(i) (emphasis added). Otherwise, the regulations provide that this statement "*may* be placed on the label." *Id.* (emphasis added); *see also* 81 Fed. Reg. at 33868 ("[O]ur preexisting regulations, at § 101.9(c)(7)(i), require the declaration of the amount of protein by weight and provide for voluntary declaration of the percent DV for protein on the Nutrition Facts label"). Indeed, when the FDA promulgated Section 101.9(c)(7), it specifically declined to require a "mandatory declaration of protein as a percent RDI" on all products. 58 Fed. Reg. 2079, 2102 (Jan. 6, 1993). Because the "current evidence suggests that the diet typically consumed in the United States provides for an adequate protein intake of sufficiently high quality to meet the nutritional needs" of consumers, the FDA found that "the additional costs associated with determination of the PDCAAS, which are necessary to calculate the percent of the DRC for protein, are not warranted on foods . . . unless protein claims are made." *Id.*

Although Section 101.9(c)(7)(i) requires a statement of the "corrected amount of protein" if "a protein claim is made for the product" (*id.*), the regulation does not define the term "protein claim." The Ninth Circuit has held, however, that a "protein claim" is a shorthand for a nutrient content claim that (1) appears on a product label outside of the nutrition facts panel and (2) characterizes the amount of protein in the food:

> The statute and regulations, including 21 C.F.R. § 101.13, specify what claims manufacturers may make about a food's nutrient content **on product labels** *outside* of the NFP [Nutrition Facts Panel], such as on the front label. When manufacturers make a claim outside the NFP that describes the amount of one of the nutrients required to be included in the NFP, FDA regulations refer to the statement as a "nutrient content claim," or, if the statement describes protein, a "protein claim."

*Nacarino v. Kashi Co.*, 77 F.4th 1201, 1205 (9th Cir. 2023) (italics in original) (bold font and underlining added).[1]  In other words, "if a *label* includes a protein claim," it "triggers a provision . . . that requires the manufacturer to display PDCAAS-corrected protein content as a percent daily value within the NFP in addition to displaying protein quantity in grams."  *Id.* (emphasis added).

## II.    Allegations of the Complaint.

This lawsuit challenges the labeling of Tilray's Hemp Protein + Fiber supplement.  Consistent with the regulations, some versions of the label include both a front-label protein claim ("11g Plant-Based Protein") and a statement of the "corrected amount of protein" ("11%") in the Nutrition Facts panel.  *See* Ex. 1.[2]  That version of the label appears below:



---

[1] Unless noted, all citations and internal quotation marks are omitted.

[2] Exhibit 1 consists of an image of the labeling of the Hemp Protein + Fiber supplement at issue.  The Court can consider this label on a motion to dismiss under the incorporation by reference doctrine, which allows the Court to "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the . . . pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original).  Courts routinely find that they "can properly consider the product labels . . . under the incorporation by reference doctrine." *Hayden v. Bob's Red Mill Natural Foods, Inc.*, 2024 WL 1643696, at *3 (N.D. Cal. Apr. 16, 2024); *see also, e.g.*, *Brower v. Campbell Soup Co.*, 243 F. Supp. 3d 1124, 1128 (S.D. Cal. 2017) (considering product packaging on a motion to dismiss where the plaintiffs' "entire case theory depend[ed] on the labels . . . to which they refer extensively in their complaint").

*Id.* (highlighting added).  Plaintiff does not allege that this label is deceptive or unlawful.

Other versions of the labeling—including the version Plaintiff depicts in her complaint—do not include a front-label protein claim and do not state the "corrected amount of protein" in the Nutrition Facts panel:

 

Compl. ¶ 2.  In a creative effort to plead around the absence of a protein claim on the label, Plaintiff alleges that Tilray "prominently displays the total protein content of its Products through its Amazon.com storefront on the front of each listing (the Products' 'label' or 'packaging')."  *Id.*  After defining the "label" and "packaging" to mean an Amazon.com webpage (as opposed to the product label or the package that contains the product), Plaintiff alleges that Tilray "shows the total protein amount on the front of the products' packaging and labeling but does not show the daily value for that amount on the back."  *Id.* ¶ 3.  Plaintiff alleges that this is "misleading because plant-based proteins are often less

digestible, meaning the human body does not absorb the full amount of protein." *Id.* "[B]y not disclosing the daily value to consumers," Plaintiff alleges that Tilray "misleads consumers into believing they are getting more protein than they actually are." *Id.*

Based on this theory of mislabeling, Plaintiff asserts claims for: (1) violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (2) violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (3) violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (4) unjust enrichment; and (5) breach of express warranty. *See* Compl. ¶¶ 46–83. Plaintiff asserts all five claims on behalf of a putative class of "all persons in the United States who purchased Defendant's Products." *Id.* ¶ 37.[3]

## **ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facts indicating the "mere possibility of misconduct" fall short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 679. Rather, the plaintiff must "allege more by way of factual content to nudg[e] his claim" of unlawful action "across the line from conceivable to plausible." *Id.* at 683. "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679)

"A district court may dismiss a complaint when its allegations 'give rise to an affirmative defense that clearly appears on the face of the pleading.'" *Nacarino*, 77 F.4th at 1203 (quoting *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022)). "Preemption . . . can be such a defense." *Pardini v. Unilever U.S., Inc.*, 65 F.4th 1081, 1084 (9th Cir.

---

[3] Notably, the putative class is not limited to consumers who purchased the product through Amazon.com. Instead, it includes *all* consumers who purchased the product, including those who purchased the product through brick-and-mortar stores and never saw the language on the Amazon.com webpage that allegedly triggered the duty to state the "corrected amount of protein" on the label. *See* Compl. ¶ 37.

6

2023) (*Pardini II*); *see Nacarino*, 77 F.4th at 1204 (same).  Because Plaintiff's allegations

confirm that her claims are preempted by federal law, this Court should dismiss her lawsuit.

**I.    Plaintiff's Lawsuit Is Preempted Because the FDA Regulations Do Not Require a Statement of the "Corrected Amount of Protein" Absent a "Protein Claim."**

The crux of Plaintiff's lawsuit is that the label fails to "disclos[e] the daily value" of protein to consumers, which "misleads consumers into believing they are getting more protein than they actually are."  Compl. ¶ 3.  The problem with this theory is that the front label Plaintiff depicts in her complaint does not include a protein claim.  *See id.* ¶ 2.  Because that version of the label does not include a protein claim, the FDA regulations make clear that a statement of the "corrected amount of protein" is voluntary—which means that Plaintiff cannot use state law to hold Tilray liable for failing to include the "corrected amount of protein" on the label.

"The Food, Drug and Cosmetic Act (FDCA), as amended by the Nutrition Labeling and Education Act (NLEA), expressly preempts all state statutes and law that 'directly or indirectly establish any requirement for the labeling of food that is not identical to the federal requirements' set forth by statute and Food and Drug Administration (FDA) regulations."  *Nacarino*, 77 F.4th at 1204; *accord* 21 U.S.C. § 343-1(a)(5).  This is a "broad preemption provision."  *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1053 (N.D. Cal. 2013) (*Pardini I*).  And because the NLEA includes an express preemption provision, no presumption against preemption applies.  *See Nacarino*, 77 F.4th at 1204 n.4.

As the FDA has explained, the phrase "'[n]ot identical to' does not refer to the specific words in the requirement but instead means that the State requirement directly or imposes obligations or contains provisions" that are "not imposed by or contained in" or that "[d]iffer from those specifically imposed by or contained in" the FDCA or the FDA's implementing regulations.  21 C.F.R. § 100.1(c)(4).  As a result, the "NLEA preempts all state law claims that directly or indirectly establish any requirement for the labeling of food that is not identical to the federal requirements."  *Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 142 (9th Cir. 2020); *see also Pardini II*, 65 F.4th at 1084–85 ("[T]he FDCA's

1  preemption provision can preempt state law statutory and common law causes of action

2  . . . to the extent those claims would directly or indirectly impose nutrition label

3  requirements different than those prescribed by federal law.").

4         That principle is fatal to Plaintiff's claims.  As Plaintiff's complaint makes clear, the

5  product label depicted on the Amazon webpage does not promise a specific amount of

6  protein on the front label.  *See* Compl. ¶ 2.  The *only* nutrient content claim that appears on

7  the front label is "11g Fiber."  *See id.*  Absent a front-label claim that quantifies or

8  characterizes the amount of protein in the product (*i.e.*, a "protein claim"), the FDA

9  regulations do not require the disclosure of the "corrected amount of protein" in the

10  Nutrition Facts panel.  *See* 21 C.F.R. § 101.9(c)(7)(i); 81 Fed. Reg. at 33868 (describing

11  the disclosure of the corrected amount of protein as "voluntary").  Plaintiff cannot use state

12  law to impose a labeling requirement that the FDA has specifically declined to impose.

13         The Seventh Circuit's decision in *Turek v. General Mills, Inc.*, 662 F.3d 423 (7th

14  Cir. 2011), is instructive.  There, the plaintiff alleged that the labeling of the defendants'

15  "Fiber Plus" bars was misleading because it failed to disclose that the fiber was from

16  "inulin extracted from chicory root," which the plaintiff characterized as "inferior to

17  'natural' fiber and actually harmful to some consumers."  *Id.* at 425–26.  The Seventh

18  Circuit concluded that this lawsuit was preempted because the FDA regulations governing

19  the labeling of fiber did not require the disclosure of inulin or its alleged health effects.  *See*

20  *id.* at 427.  Because the "disclaimers that the plaintiff wants added to the labeling of the

21  defendants' inulin-containing chewy bars are not identical to the labeling requirements

22  imposed on such products by federal law," the court concluded that the plaintiff's claims

23  were "barred."  *Id.*  And while the plaintiff argued that those disclaimers would be

24  "consistent with the requirements imposed by the Food, Drug, and Cosmetic Act," the court

25  rejected this argument and emphasized that "consistency is not the test; identity is."  *Id.*

26         That reasoning applies with equal force here.  The FDA has specifically declined to

27  require manufacturers to state the "corrected amount of protein" in the Nutrition Facts

28  panel unless the product label includes a "protein claim."  *See* 21 C.F.R. § 101.9(c)(7)(i).

The FDA has made clear that the declaration of the "corrected amount of protein" is "voluntary" if the label does not include a "protein claim." 81 Fed. Reg. at 33868. Indeed, the FDA specifically *declined* to require manufacturers to state the "corrected amount of protein" on all products because it determined that the "additional costs" required to calculate the "corrected amount of protein" are "not warranted on foods . . . unless protein claims are made." 58 Fed. Reg. at 2102. In light of the FDA's deliberate decision *not* to require a statement of the "corrected amount of protein" unless the manufacturer makes a "protein claim" on the label, Plaintiff cannot hold Tilray liable under state law for failing to state the "corrected amount of protein." *See* 21 U.S.C. § 343-1(a)(5).

## II.    Plaintiff's Efforts to Plead Around Preemption Fail.

Plaintiff alleges that the inclusion of the statement "11g of Protein" on the Amazon.com product page triggers an obligation to state the "corrected amount of protein," even if the *label* does not include a protein claim. *See* Compl. ¶ 2. But as explained below, a statement about protein content on a third-party, extra-label source like Amazon.com does not trigger any duty to state the corrected amount of protein *on the label*. Plaintiff's reliance on the Amazon.com webpage independently fails because she has not alleged any facts suggesting that Tilray dictated the contents of this webpage. And to the extent Plaintiff asserts that the product name ("Hemp Protein + Fiber") requires Tilray to state the "corrected amount of protein" on the label, that claim fails because the name "Hemp Protein + Fiber" is not a "protein claim" under the regulations.

### A.    The statement "11g of Protein" on the Amazon.com page does not require Tilray to state the "corrected amount of protein" on the label.

There is no dispute that a manufacturer who makes a protein claim on the label must state the "corrected amount of protein" in the Nutrition Facts panel. *See Nacarino*, 77 F.4th at 1205 (noting that "if a *label* includes a protein claim," it "triggers a provision . . . that requires the manufacturer to display PDCAAS-corrected protein content as a percent daily value figure within the NFP in addition to displaying protein quantity in grams") (emphasis added). Indeed, that is why Tilray states the "corrected amount of protein" in the Nutrition

Facts panel when it includes a protein claim on the front label. *See* Ex. 1. But the inclusion of the statement "11g of Protein" in the website copy on the product's *Amazon.com page* does not require Tilray to state the "corrected amount of protein" on the product's *label*.

This conclusion follows naturally from the text of the FDA regulations and the FDCA. 21 C.F.R. § 101.13, which governs the use of nutrient content claims (including "protein claims"), dictates when a nutrient content claim may be made "on the label or in labeling of foods." 21 C.F.R. § 101.13(b). In other words, a statement is not a "nutrient content claim"—and is therefore not a "protein claim"—unless it appears on a "label" or in "labeling." Under the FDCA, a "label" is "a display of written, printed, or graphic matter upon the immediate container of any article." 21 U.S.C. § 321(k). "Labeling," in turn, "means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." *Id.* § 321(m).

The Amazon.com page Plaintiff cites in her complaint is plainly not a "label," as it does not appear on the "immediate container" of the product. *Id.* § 321(k). Nor is it a form of "labeling," as it does not "accompany" the product. *Id.* § 321(m). Instead, it is one of many third-party websites from which consumers can purchase the product. And even if a web page might constitute "labeling" if the product label "contains a *specific statement* referring the consumer to a specific website for information about the claim in question," there is no indication that the product label refers consumers to Amazon.com—which means that the Amazon.com web page is not a form of "labeling." *De Keczer v. Tetley USA, Inc.*, 2014 WL 4288547, at *9 (N.D. Cal. Aug. 28, 2014) (emphasis in original); *cf. Sandoval v. PharmaCare US, Inc.*, 730 F. App'x 417, 420 (9th Cir. 2018) (finding that the website for the defendant's "IntenseX" supplement was "labeling" where "the IntenseX label refers consumers specifically to www.intensex.com (rather than PharmaCare's company website), which contains information only about IntenseX, including the product's ingredients, their beneficial properties, and their ability to treat diseases").

*Wilson v. Frito-Lay North America*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013), helps illustrate why the Amazon.com webpage is not "labeling." There, the plaintiffs challenged

statements that appeared on several Frito-Lay products, as well as statements on Frito-Lay's website that the plaintiffs characterized as "misleading and unlawful." *Id.* at 1138. The plaintiffs argued that the website "explains and supplements Defendant's other statements about the Products, such that the Court should find that the website language constitutes labeling." *Id.* at 1142. The court disagreed. Even though the product labels included Frito-Lay's website address, the court explained, "[n]owhere on any Product's packaging does Defendant direct consumers to its website for more facts about the labeled Product." *Id.* at 1143. Nor did the "website address appear[] . . . near the ingredients list or any nutritional facts," as one would expect if the website was intended to "accompany" the FDA-regulated contents of the label. *Id.* at 1142–43. The court therefore declined to "find that Defendant's website constitutes 'labeling' under the FDCA." *Id.*

Here, as in *Wilson*, the product label does not direct consumers to visit Amazon.com for more information about the product's protein content or other nutritional characteristics. In fact, the label does not reference Amazon.com at all. The label and the Amazon.com webpage are independent sources of information about the product, such that the webpage is not a form of "labeling" under the FDCA. *See Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *13 (N.D. Cal. Mar. 14, 2014) ("On its face, the product label neither 'supplements' nor 'explains' the website or vice versa, and thus the two have no relationship such that they are part of the same label. Any statement on Bigelow's website cannot be attributed to the challenged products . . . ."). Because the Amazon.com webpage is neither a "label" or a form of "labeling" under the FDCA, a statement on this webpage is not a nutrient content claim—or a "protein claim"—as a matter of law. *See* 21 C.F.R. § 101.13(b). And because Plaintiff has not cited any place on the label or the "labeling" that includes a protein claim, she cannot hold Tilray liable under state law for failing to state the "corrected amount of protein" in the product's Nutrition Facts panel.

**B.    Plaintiff has not plausibly alleged that Tilray is responsible for the contents of the Amazon.com webpage.**

Leaving aside her failure (and inability) to allege that the Amazon.com webpage is a form of "labeling" under the FDCA, Plaintiff's reliance on the Amazon.com webpage also fails because she has not plausibly alleged that Tilray is responsible for its contents—including the statement that the product contains "11g of Protein."

Under California law, a defendant's liability for unfair business practices (such as alleged product mislabeling) must be based on its personal "participation in the unlawful practices" and "unbridled control" over those practices. *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (addressing UCL claim); *see also Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 811 (9th Cir. 2020) (rejecting the proposition that "a relaxed standard for vicarious liability permits [a] CLRA claim to proceed in the absence of allegations of personal participation . . . and unbridled control" by the defendants).

The same is true of Plaintiff's common-law claims. For example, a claim for breach of express warranty requires a promise or affirmation of fact *by the defendant*. *See, e.g.*, *Pisano v. Am. Leasing*, 146 Cal. App. 3d 194, 197–98 (1983) ("In the absence of any affirmations of fact or promises *made by defendants* to plaintiff, plaintiff cannot recover . . . under his theory of breach of express warranty."). And a claim for unjust enrichment requires "some showing of wrongdoing in obtaining the benefit, 'otherwise, though there is enrichment, it is not unjust.'" *Echo & Rig Sacramento, LLC v. AmGuard Ins. Co.*, 698 F. Supp. 3d 1210, 1218 (E.D. Cal. 2023) (quoting *Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1422 (1988)).

That principle dooms Plaintiff's lawsuit. While Plaintiff refers to the Amazon.com webpage as "Defendant's official Amazon storefront" (Compl. ¶ 7), she pleads no facts suggesting that Tilray is responsible for the contents of this web page—let alone the language "11g of Protein." Indeed, common sense—which this Court must apply in ruling on a motion to dismiss—makes clear that "third-party websites may include numerous statements, claims, and pictures not approved or endorsed" by a manufacturer like Tilray.

*Reed v. NBTY, Inc.*, 2014 WL 12284044, at \*9 (C.D. Cal. Nov. 18, 2014). Absent any allegation that Tilray dictated the contents of this website, Plaintiff cannot hold Tilray liable because the Amazon.com webpage states that the product contains "11g of Protein."

Judge Bernal's decision in *Reed* is instructive. There, the plaintiffs alleged that the defendants "made numerous false and misleading claims" about the benefits of their exercise supplements "on the labels and proprietary and third-party websites advertising the Products." *Id.* at \*1. Judge Bernal found that the plaintiffs' lawsuit failed because "[a]ll of the claims Plaintiffs actually viewed were on the product pages . . . on bodybuilding.com—a third-party website." *Id.* at \*10. As Judge Bernal explained, there was "no evidence that Defendants controlled the language on the third-party site when the challenged statements appeared." *Id.* at \*11. "Without any evidence of Defendants' direct participation in or control over bodybuilding.com's marketing claims," the court found that "Defendants cannot be liable for the statements made on a third-party website." *Id.*

That reasoning applies with equal force here. Like the plaintiffs in *Reed*, Plaintiff has not alleged any facts supporting her claim that Tilray had any role in deciding to state on the Amazon.com page that the product contains "11g of Protein." Absent any such allegation, there is no basis to hold Tilray accountable for statements that appear on a website that stocks literally millions of consumer products. The fact that the phrase "11g of Protein" appears on a third-party website does not require Tilray to state the "corrected amount of protein" in the Nutrition Facts panel, and it accordingly does not allow Plaintiff to hold Tilray liable under state law for failing to do so.

## C.    "Hemp Protein + Fiber" is not a "protein claim" under the regulations.

As explained above, the front label that Plaintiff depicts in her complaint does not include any claim about the amount of protein in the product. *See* Compl. ¶ 2. The *only* reference to protein appears in the product name "Hemp Protein + Fiber." To the extent Plaintiff claims that the phrase "Hemp Protein + Fiber" is a "protein claim," that claim fails because "Hemp Protein + Fiber" does not characterize the *amount* of protein in the product.

As the Ninth Circuit made clear in *Nacarino*, a "protein claim" is a specific kind of "nutrient content claim." *See* 77 F.4th at 1205 ("When manufacturers make a claim outside the NFP that describes the *amount* of one of the nutrients required to be included in the NFP, FDA regulations refer to the statements as a 'nutrient content claim,' or, if the statement describes protein, a 'protein claim.'") (emphasis added).  A nutrient content claim, in turn, is a claim that appears outside the nutrition facts panel and that "expressly or implicitly characterizes the *level* of a nutrient of the type required to be in nutrition labeling under [21 C.F.R.] § 101.9 or under [21 C.F.R.] § 101.36." 21 C.F.R. § 101.13(b) (emphasis added).  In contrast, "[s]tatements that a product contains certain nutrients, without characterizing the amount of nutrients or suggesting that a food has health benefits because of the nutrients[,] are not nutrient content claims." *Gutierrez v. Kendal Nutricare USA LLC*, 2025 WL 2693812, at *6 (E.D. Cal. Sept. 22, 2025).

Viewed through that lens, "Hemp Protein + Fiber" is not a nutrient content claim—and is therefore not a "protein claim"—because it does not characterize the amount or level of protein in the product.  Under similar circumstances, many other courts have found that statements that merely reference the presence of specific nutrients are not nutrient content claims. *See, e.g.*, *Gutierrez*, 2025 WL 2693812, at *7 (finding that the statement "milk-based powder with iron" was not a nutrient content claim because it "merely states that there is iron included in the Product, but does not indicate how much or suggest health benefits because of the nutrients"); *Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290, 1298–99 (N.D. Cal. 2023) (finding that the statement "Eat Good Fat" was not a nutrient claim and noting that the nutrient content claim "regulations apply only to statements about the *amount* of fat in a product—not the fat's quality or value") (emphasis in original).  Here too, because "Hemp Protein + Fiber" does not state *how much* protein is present in the product, it is not a "protein claim" and does not require Tilray to state the "corrected amount of protein" in the Nutrition Facts panel.

## CONCLUSION

This Court should dismiss Plaintiff's lawsuit with prejudice.

1   Dated:  February 25, 2026            JENNER & BLOCK LLP

2                                 By:            /s/  Alexander M. Smith
3                                                  Alexander M. Smith

4                                        Attorneys for Defendant
5                                        Tilray Brands, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel for Defendant Tilray Brands, Inc. certifies that this brief contains 5,065 words, which complies with the word limit of Local Rule 11-6.1.


Dated:  February 25, 2026                    JENNER & BLOCK LLP

                                   By:      /s/  Alexander M. Smith
                                            Alexander M. Smith

                                   Attorneys for Defendant
                                   Tilray Brands, Inc.